Case number 22-3058. United States of America. This is Joey Green-Remache, also known as Joey Green-Imbalance. Mr. LeCar, for the imbalance. Ms. Part, for the epilepsy. Mr. LeCar, before you begin, let me just say to everybody arguing this morning, the reason we're late coming in is this sound system, for several of us, is being worked on, but it's very hard for some of us to Okay, well, then, you know, if you would adjust counsel, if counsel would adjust the podium anyway, you need to, and get as close to the black bar microphone as you can. I'll do my level best. Okay. Mr. LeCar. Thank you, Your Honor. I'm very pleased. Both the government and Mr. Green agree that the normal rule in this circuit, when ineffective assistance of counsel is waged, for the first time by a new counsel who was not involved in the trial proceeding flow, that case will be remanded for a factual hearing, for development of a record, unless the following exceptions occur. That the case is, the theory is legally foreclosed, which isn't the case here, while the facts conclusively show that the appellant is not entitled to relief, which is not the case here. However, the law is foreclosed, the theory, and we have cited a number of cases, primarily at the district court level, that support our theory that it was an error not to seek a Dalbert hearing, not to move to strike the expert's testimony at the conclusion of her testimony. Are you suggesting that generalized testimony can never be allowed? Can never be allowed? Generalized testimony from an expert about a particular subject could never be allowed? Oh, I don't, there are circumstances where it can be allowed, but it just wouldn't happen in this case for the following reasons, Judge Childs. There was no record below, and there were viable claims that could have been raised as to the expert's failure to apply her knowledge reliably to the underlying facts of the case. But if you look at the record, and I was very concerned about that myself, that one, we would allow generalized testimony, two, we would make sure that the testimony mattered in the case as to the facts presented, and not so general that, for example, in a domestic violence case, you wouldn't allow them to say, and then their perpetrator could continue on this line of assaulting them, and then they'd be dead if that wasn't the facts of this case. So, as I read the record, I feel like she stayed within her lane to only address issues that were here, but never opining on the ultimate issue. I respectfully submit that your court might take a look at pages 21 through 24 of our brief, and let me give you some examples. She testified to this phenomenon of coercive control relationships. She said they're characterized by the victim, and it's quite clear that she meant the victim typically being a woman, or she professed to be gender neutral on the issue. She said that there are five to seven attempts to leave. There was nothing to that effect in the record. She said, for example, that there was sexual violence in the bedroom, typically in these relationships. There was in addition to that, when people are jailed, when alleged accusers are jailed, they tend to call abusers who are jailed. I'm sorry, Your Honor. They tend to call their victims and threaten them, ultimately threaten them. There's nothing to that effect in this case. There's alleged pressure from the victim's family and from the alleged abuser's family on the victim to recant. There was nothing like that in this case. Now, there was no affidavit up front. There was no affidavit that was submitted in connection with the Dalbert motion. Counsel should have addressed up front and sought a hearing on the issue of whether Dr. Ogaben's proposed testimony reliably fit the facts of this case. I could not do better than to commend the court to the district court decisions in the opinions of Raymond and Garnier, as well as Schneider. They really spell out the law pretty well. Now, I will submit to you, Judge Charles, there has been a trend in the courts to allow this sort of testimony. I think it's wrong. I think the problem is at the appellate court level, as we said in our reply brief, there typically has been a Dalbert hearing. There was no Dalbert hearing in this case. I need to address something about the theory of ineffective assistance of counsel. In my hubris, which is uncharacteristic of me, I said that the Sitzman case, which the government cited, I said that it was unassailable in the result because, among other things, the appellant, in that case, the lawyer, who was the third lawyer on the case, there were two lawyers below, said that there was no need for a remand. I feel to note the spirit of dissent by a member of this panel, which would support our theory that the case should be remanded for development of a factual record. The most glaring thing that we have in this case is that we have an expert witness, who juries tend to trust expert witnesses. They have a special aura of respectability. In fact, the government counsel below, in the closing argument, talked about Dr. Aghavan as a incredible scientist, and she's giving you an explanation of all that's happened here, except that that explanation really overstated the relationship. This is a very strange... Okay, let's take the expert witness out of it. You still have to prove that, essentially, your client would not have been convicted. We have other testimony, the victim's neighbor, Michelle Talley, the victim's roommate, Tyaira Berry, who saw the defendant actually drag the case where there's a violation of a protective order. So technically, the defendant should not even be near the victim. That's a valid observation. I would add the marks of abuse that were on the victim, as well as the jail calls, and her own grand jury testimony. Why can't we skip over the deficient performance and say there's just not a chance in the world this jury wouldn't have convicted him, separate and apart from the expert? Well, I think, Your Honor, what happened here is that if you viewed that no jury in the world would not have convicted, then I want to do my best to persuade you otherwise. Here's why. For every statement she made, there was a retraction. She's professed her undying love for the appellant right at the start. I grant you, I conceded in my opening brief, there was testimony from other people. However, the critical issue needs to be addressed here is what was his men's way and what happened here? What was going on in his head at the time this alleged violation occurred, interstate transportation in violation of a CPO? There was testimony in the record, Judge Henderson and Judge Childs, that they had continued to, I don't want to use this word lightly, fool around. They stayed in contact, notwithstanding the protective order. Including a jail cell call. So the question becomes, what was going on inside his head? And we have a jury that's primed, it can make its own conclusions based on common sense and its experience. Rather than have a government put its thumb on the scale with somebody who doesn't know anything about the facts and who testified as to a number of phenomena, phenomena that she said was characteristic of this sort of a relationship without ever having examined. Okay, so the remedy you seek would be to remand and have a new trial. What is it that you would show differently? Because you still have this other testimony that myself and Judge Henderson are alluding to it. Other facts and evidence in the case. There is that testimony, but you have to ask this, Judge Childs. You're de novo, without a factual record, there was no, nobody made a motion below for a Daubert hearing. Could he have been convicted without, just on that testimony alone, without a Daubert hearing? Perhaps, but we'll never know. We will never know that. Because the government put its thumb on the scale by bringing in a so-called expert who knew nothing about the facts and was quite unimpassioned about knowing nothing. But let's look at the elements. The crime for interstate domestic violence requires only that the person who travels in interstate commerce do so with intent to kill, injure, harm, or intimidate, or attempt to commit a crime of violence, or cause travel of the victim by force. So it's almost a strict liability standard. Intent, who makes that decision? That's the factual issue. But when on the other side of that intent is actual physical harm, dragged out physical evidence on the body, how do we not gauge intent from that? Well, she said that the sex was consensual. That's what she said. First she said- Dragging out of the apartment was consensual too? What, Your Honor? Dragging out of the apartment. No, absolutely. But that's not an element of the crime. The crime is taking it across state, is taking the victim across state lines and having violence at that point, is my understanding. But I'm talking about the initial contact. They're not supposed to be in contact. You drag her out of an apartment. You started your crime. And while she said a trial, in the record, she also said that she went with him. He came in and she went with him. We have a witness who saw it otherwise. Well, I understand. The question becomes, and I see I'm running out of time. You can continue. Go ahead. Well, thank you. The question becomes, was this trial elementarily appropriate, given the fact that there was an expert who was put on who knew nothing about the facts? And I think, and I appreciate you giving oral argument in this case, because there is an important issue here working underneath this. Under what circumstances should people be allowed to testify as experts when they're talking about their experience? They're not talking about laws of physics. They're not talking about gravity. They're talking about human phenomena. It's almost like the Goldwater rule. In essence, indirectly diagnosing the field. I see that I've overstated my time. All right. We'll give you a couple of minutes in reply. Thank you, Your Honor. Ms. Park? May it please the court, Ann Park, on behalf of the United States. Arraignment for an evidentiary hearing is not warranted. Mr. Green-Romash has failed to fell below an objective standard of reasonableness and that the counsel's deficiency prejudice. Beginning with deficiency, federal circuit courts have routinely upheld this type of testimony, generalized expert testimony on the dynamics of abusive relationships. And to explain specifically the irrational behavior or contradictory testimony of domestic violence victims, trial counsel thus had no legal basis to challenge the mission of Dr. Green-Romash. He cannot be deemed constitutionally deficient for failing to raise meritless evidentiary objection. How do we deal with the fact that the jury hung on the kidnapping and burglary charges? Because we need to have defendants show that there would have been a difference in the outcome. So you've got at least two charges that were not... And this relates to the prejudice prong of Strickland. Kidnapping requires the government to prove... The government's argument is the verdict, the way the jury handed down the verdict. They only convicted on the interstate violation of protection order count. They could not reach a verdict as a kidnapping and first degree burglary. Kidnapping requires the government to prove that Mr. Green-Romash held or detained BP for some purpose or benefit. The government in closing and its theory of the case was that the benefit he gained by detaining her was raping her behind the elementary school in Maryland. So the kidnapping incorporated the rape. And the rape, there was plenty of evidence. It was not disputed that they had sex. The issue was consent. The only test, the only evidence, the only person who could prove that, so to speak, is BP. So her credibility was on the line there. The violation of protection order count, you didn't need, you really, it was the only count that you didn't really need her testimony. Because the assault, which defense counsel really did not dispute below as to what happened in the apartment, because Ms. Berry's testimony was so strong on that point. That was what showed the violation of the CPO. It also showed the use of force to cause her to travel across state lines. And I just wanted to make clear to the court, your honor was citing to interstate violation of protection order B, I mean, A, subsection one, which is not what she was actually, he was actually charged with. It was subsection two, causing travel of victim, which says a person who causes another person to travel in interstate commerce by force, coercion, duress, or fraud, and the course of such conduct engages in conduct that violates the portion of a protection order that prohibits or provides protection against violence, et cetera. That's what he was. If you think the case, can you hear me? You can't. If you think the case is so clear, why did you need the alleged expert? The expert, there's no doubt the expert is helping you to tip the scale to the extent the prosecutor's got to worry about the recantation. The jury is going to be affected by that. So you agree the expert is going to tip the scales. That's why you put her in. Sure, expert would aid the jury in understanding the evidence. Because we have a victim who says one thing on the day of the incident, an inner grand jury, and she says completely- That's essentially telling the jury in my expert view, he's guilty. That's essentially what happened. I mean, you understand that as a prosecutor. You all have been there a long time. You know that's exactly what's going on. So it's interesting that you're arguing so vigorously that the evidence is clear. He can't possibly win with or without the expert. Well, I think with regard to this particular verdict, we could have won without the expert as to interstate violation of protection. The kidnapping, you look at the closing argument, a lot of the expert testimony was to talk about why the kidnapping was involuntary. And also why she didn't leave Merrill at the 7-Eleven- She recanted. I'm sorry? Why she recanted. Yes, Your Honor. That's what you're trying to get the jury to understand. Don't believe what she's saying. Yes, yes. That's what we're trying to get. She's the victim. So that's huge in a criminal case. That's huge. The victim comes in and says, it didn't happen. Well, you, the prosecutor, have got to be worried sick about that. But you're arguing like it's no big deal. You take the expert out, we're still going to win easily. Do you really believe that? Yes, that's the violation of protection. Then maybe we should do what some of our cases have suggested, remanded for a hearing on this question. There was no hearing. There was no Daubert hearing. It's kind of strange in this area because, as your opposing counsel said, it's not like this is science in some of the forensic areas, the decent forensic areas, where there really is science to talk about. This is in an area where it's much more subjective and expertise is trickier. Why are you afraid of having the trial judge on a remand to go through it to see whether there's anything to be credited? We're not afraid, Your Honor. Well, then we should remand, as some of our cases. You have to be able to show a lot to block the remand, don't you? The remand. We're not talking about a win. We're talking about a remand. I understand. I understand this court has said the general practice ordinarily, and Judge Kavanaugh in one of the opinions, it's a rare case where the court will not remand when you raise it. I understand that. We're arguing that this is one of the rare cases. I don't see the problem is, I don't understand why, because this person clearly tips the trial judge on this record, as I understand the law, was not obliged to allow it. There was no guarantee the trial judge after a hearing, if it had been challenged at the trial, it's discretionary. There's no guarantee. But there is very strong federal circuit case law that has routinely and consistently upheld this kind of evidence. That doesn't get you to a conclusion that the trial judge in this case, on this record, would have definitely admitted the testimony. We don't know that. It was never brought to the trial judge. It was never brought to the trial judge. It was discretionary. The trial judge would have had discretion to decide based on what was presented, whether this person would be allowed to test for or not. You know that this person is critical. And so if there is that possibility, it's discretionary. The trial judge never considered the question. So it could go either way. There's no law that would have compelled the trial judge to admit her testimony. And our law is, as you say, now, Justice Kavanaugh said, we normally send it back. We let that hearing happen. I don't understand why we don't send it back. That's an ordinary practice. And I agree with that, Your Honor. I'm trying to explain why we think this is the case that's one of the rare cases. I understand the omission of evidence is discretionary. But in the facts of this case and the nature of her testimony, incredibly close fit between her testimony and the facts of this case. This was in federal court. These cases don't come up a lot, but certainly in state courts, this is actually very much the norm for domestic violence cases. A lot of times by the time of trial, victims are recanted. And this kind of evidence about why what appeared to be completely irrational behavior from people on the outside. Why didn't BP leave when the police get out of the car and try to get the police officer when she was at that 7-11 after he had assaulted her before the rape happened? Experts in this area normally want to know something about the case and the people before testifying about what they surmise. But in this context- No, wait, answer my question. Don't experts in this area, before they give their opinion, their expert opinion, want to know something about the facts of the case and the people involved before they sit up and say, well, in this situation, recantation is the norm. That's what she'll do. And it doesn't surprise me that she recanted without knowing anything about her or the guy or the facts. The reason why she was brought, the government made clear, we were putting on general testimony. Courts have said consistently, it is okay. And actually, the advisory committee notes to the 2000 amendments specifically understand that the 2000 amendments in light of Doebert did not change, they call it the venerable practice of having experts testify about general principles because sometimes- You say general principles, but you're focused on coercive control and traumatic bonding. So there's at least some information that had to be relayed by the government to the witness to focus on those particular areas, not just general domestic violence and generally how a perpetrator thinks or controls a victim. That's correct. Her testimony specifically on coercive control, the tactics that abusers use to keep their victims with them, regardless of what they do, and traumatic bonding to try to explain why a victim would put her interests and needs below someone else's, even in her own safety, even when she has the opportunity to do so. And that was the reason for her testimony. And why wouldn't the expert need to know something about this case to do that? Well, the problem is in these cases, she started opining, actually applying the fact, the principles to the facts of this case, she would ultimately be commenting on BP's credibility. And that is uniquely within the province of the jury. And that's why in cases like this, courts have upheld general testimony where the expert has not spoken with the victim. That's in Levictor. And some of the other cases cited that Levictor cites, this happens. They don't speak with the victim. They don't interview anyone. They're just giving a general framework so that the jury can kind of understand some of the typical behaviors of domestic violence victims. You're saying that in the cases that have allowed the generalized testimony, those experts also would not be, number one, not opining on the facts, but would not even know anything about the case or the victim or the defendant? They purposely will not look at it because they do not want to opine what is the ultimate issue of the jury. They have to decide which version of BP's testimony. Was it the grand jury and all the statements she made close to the day of the incident? Or is it what she said in trial? This is exactly why the problem you just posed. The judges who, in their discretion, do not allow the testimony, they don't allow it for precisely these concerns because the concern the jury will think that the expert is opining on the particulars. But in this case, it's clearly- It's the thing I don't understand. It's such a str- the remand. I don't know what you're afraid of on a remand. I would have thought the government in this case would have filed a motion to say remand to have the hearing. They're not going to get anything. Why isn't that justice? I don't get that. Why are we wasting all this time when the law of the circuit says, as you said, the typical result in a case like this is to remand? But there's also language in Sitzman that says it's not- it's not reflexive. I mean, every case is different. I know there are cases that go the other way. I've been on the wrong end of one of them. Yes, yes, yes, yes. In Sitzman. You've been- you were very nice not to point that out. But in any event, I don't understand why you don't remand in a case like this when you know how fragile the expert, quote unquote, expert testimony is. Your Honor, we had all this other evidence, especially with regard to the interstate violation protection order. It wasn't just the expert testimony. That's what you'd figure out on a hearing, on remand. Your Honor, I can think of a reason why you don't remand to put this on the same district judge who has heard all this evidence and knows that- that if it's retried without expert testimony, I won't say there's not a ghost of a chance. I'll say there's a very slight chance that a jury will not convict this man. And I'm wondering why we can't glean something from the jury in this case. In other words, they did find- they violated the protective order. They didn't- they mistried on the other two. And to me, that indicates that they're thinking, well, we've heard this testimony about a change in attitude in the victim and so forth. So we don't know if she was kidnapped or not beyond a reasonable doubt. We don't know if there was first-degree burglary. But we do know this interstate order was violated. And that's what he was convicted of. That's exactly right. And it seems to me that the jury did a very good job here of either accepting the expert's testimony or rejecting it and concentrating on the evidence that came from the victim herself, from a roommate, from the neighbor, from their telephone conversation, from the bruises on her to send back. It is this one. That's correct, Your Honor. And I would just point out that- You're comfortable with that counsel? Yes, I am comfortable with that hearing, Your Honor. I'm taking you at face value. And I'd also like to point out that the B1 charge, if you look at the way the verdict panned out, what I was trying to say, they convicted on the count where her testimony was the least important, or not even important at all, because much of the elements he did not dispute. What they could not reach a verdict on was the counts that depended on her testimony and the credibility of her. First-degree burglary, if you look at the closing argument by defense counsel, he starts out with first-degree burglary. And he says, we're not worried about the assault. We all know the assault happened. But how do you know when he entered, when the defendant entered the apartment, that he had the specific intent to assault her? Because she testified at trial. BP testified at trial. He walked in. He said, I want to talk. He then points out that Ms. Berry was in her bedroom at the time. She did not know what happened those first few months until she got up and saw what she saw. And Ms. Talley had seen the defendant push his way in, but she was not in the living room. She could not have heard what the defendant said. So the only people who knew what happened in those first few minutes were, or first few seconds, really, were the defendant and the victim, again, as well as kidnapping. Only person who can talk, who knows whether it's consensual or not, are the defendant and the victim. Both those counts, her credibility was key. The jury couldn't reach a verdict on. What they did reach a verdict on was the count where her testimony really was not important at all. And that's why we think that on this particular record, the defendant has not shown a culpable claim. There are no further questions we've asked that the judgment of the district court be affirmed. Thank you. Mr. Lecker, why don't you take two minutes? We don't know in the mind of the jurors. We just don't. We do know this. If the issue was, as Judge Charles has eloquently said, consent, testimony went both ways. Why did the government have to put on an expert? Obviously, they were uncomfortable with the situation. There'd be no other reason for them to do it. You've been focusing on consent. Consent as to what, though? Because earlier, my comments were that other witnesses show victim being dragged out and other witnesses see him violating the order because he shouldn't have been there in the first place. And then earlier, you commented on, yes, but this was interstate travel. Well, you start out with the crime at the apartment and the fact that she's dragged supposedly without consent and then ends up across state lines. Why doesn't that make it interstate travel violation? Well, because you still get back to the ultimate question, mens rea, intent. What was his intent? You mean intent to have the ultimate outcome that she was across state lines without her permission? So at some point it changed. Intent to go outside. She didn't want it. They didn't want to have it. She would. This is again, this is only demonstrating the difficulty of this. We have a really unexplored issue of an expert who's bolstering who's bolstering the government's theory. What you have here is a victim. BP, the alleged victim says, listen, I didn't. I wasn't happy about him coming in, but he wanted to have a discussion. I agreed to have a discussion. We got in an argument. They had a relationship. It was an on again, off again relationship. Who knows? Who really knows why they went across state lines? He took her. I would open his car. She said they walked hand in hand downstairs and they went out and they went, they went to his car and they went over to Maryland. And there she said, ultimately, she testified they had consensual sex. I will admit to you, Judge Charles, these are disquieting facts. If you believe a government's theory of a case problem with the government's theory of a case is they put the thumb on the scale here that a jury, we don't know why the jury convicted. We have no idea what was in their minds. What we do know was that there was somebody in that in that courtroom who was testifying as to a phenomena that she said she had observed in her experience that although she said, I don't know anything about the victim, alleged victim here. I know nothing about the facts. She related a whole host of events that could well have influenced the jury's mind into thinking that this was an example. This interstate transportation charge was an example, an application of a set of phenomena that were not in the record. See, the problem, counsel, that my colleagues are addressing, which is a difficulty on your side, excuse me, what they're saying essentially to you is take the expert out. Defendant's still going to easily lose. Just use the record without the expert, given what we're talking about, as Judge Charles just recounted. It's going to easily lose. There's no way you can win that case. So there's really nothing. It's almost a harmless error kind of argument. There's really nothing. If it was around his discretion, Eric, maybe it wasn't the best decision to allow the expert in. But what we're essentially posing is a harmless error situation. It's so what? There's no conceivable way on this record that he can win, given what the evidence, the rest of the evidence is. I think the fact that the jury hung on the other two counts is a strong indication that we don't know what would have happened if he fought for, he might well have been acquitted or hung jury on that as well. We can't take that expert out of the equation. It's comfortable to think that you can, but in reality, you and I, you know, and I know, and we all know, jurors pay attention. Experts. Best advice for this case. All right. Thank you. Thank you. You were appointed, Mr. Leclerc, and you've done your usual able job in the court. Thank you. Thank you. Always a pleasure to appear. Thank you.
judges: Henderson, Childs, Edwards